UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RICHARD TIPTON, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-1267** |
| **NORTHROP GRUMMAN CORPORATION** | **SECTION "K"(5)** |

### *ORDER AND OPINION*

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendant F.A. Richard & Associates (Doc. 49). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motion.

### BACKGROUND

Richard Tipton, James Ursin, Donald Meacham, Berwick Lagarde, Oswaldo Rodriguez, Oscar Dorsey, and Alvin Breaux, all either employees or former employees of Northrop Grumman Ship Services, Inc. ("Northrop"), filed suit against Northrop, Northrop Grumman Corporation, the United States Department of Labor, F.A. Richard & Associates, Inc. ("FARA"), New Orleans Metal Trades Council, and the International Association of Machinists and Aerospace Workers, Local Lodge #37 alleging violations of the American with Disabilities Act ("ADA"), the Civil Rights Act of 1964, and the Longshore and Harbor Workers Compensation Act ("LHWCA"), among other claims. Specifically as to FARA, plaintiffs' complaint alleges:

> F.A. Richards and Associates which is Northrop Grumman Shipbuilding's insurance carrier is a part of this action because they place or require workers to enter the shop that cannot provide services. They also controvert workers compensation claims when a worker disagree with Northrop. Also after a person has been allowed to stay in the RWRP shop for weeks. Upon leaving they often terminate their benefits, even though they are following the same doctors order that place them in the shop.

FARA filed a motion for summary judgment seeking to dismiss plaintiffs' claims against it

contending that it is the third party administrator for Northrop's workers compensation plan which includes LHWCA benefits, and that as such it cannot be liable in tort for an alleged failure to pay or authorize payment of LHWCA benefits to Northrop's employees.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir.1996) (*citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.1992) *(quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), cert. denied, 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248. 106 S.Ct. 2505, 2510, 91. L.Ed. 2d 202 (1986).

In deciding a motion for summary judgment, the Court must avoid a "trial on affidavits." "Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts" are matters to be determined by the trier-of-fact. *Id*. at 255, 106 S.Ct. at 2513.

## LAW AND ANALYSIS

FARA's contract with Northrop establishes that Northrop is a self-insured employer for claims under the LHWCA and that FARA is the third party administrator of Northrop's LHWCA insurance plan. Doc. 49-5.  Plaintiffs did not produce any competent summary judgment evidence supporting their allegation that FARA is Northrop's LHWCA insurer or raising a genuine issue of material fact as to whether FARA is the third party administrator of Northrop's LHWCA insurance program.

> The Louisiana Insurance Code provides in pertinent part that:
>
> A.  If an insurer utilizes the services of an administrator, the insurer shall be responsible for determining the benefits, premiums, rates, underwriting criteria, and claims payment procedures applicable to such coverage and for securing reinsurance if any.  The rules pertaining to these matters must be provided, in writing, by the insurer to the administrator. The responsibilities of the administrator as to any of these matters shall be set forth in the written agreement between the administrator and the insurer.
> B.  It shall be the sole responsibility of the insurer to provided for competent administration of its programs.

La. Rev. Stat. 22:3036.

While legal precedent interpreting these provisions is slim, the reported decisions uniformly hold that  the third party administrator cannot be responsible in tort for a  failure to pay benefits due under the plan. *Baugh  v. Parish Government Risk Management Agency*, 715 So.2d 645, 647 (La.

App. 2nd Cir. 1998 ); *Hale v. F.A. Richard & Associates, Inc.*, 756 So.2d 1261, 1263 (La. App. 2nd Cir. 2000); see also *Nelson v. Continental Casualty Company*, 412 So.2d 701, 705 (La. App. 2nd Cir. 1982)(penalties under LSA-R.S. 22:657 not applicable to an employed claims administrator).

> The clear implication of the statute is that the third party administrator cannot be responsible to the insured for the failure to pay health benefits in administering the plan, since this is the sole responsibility of the insurer. The insurer's non-performance of its contract, even when such non-performance results from the delegated decision-making authority of a third party administrator, remains the insurer's responsibility and obligation. The same result occurs under the general law of representation and mandate where a disclosed agent enters or fails to carry out the contract on behalf of the principal.

*Baugh v. Parish Government Risk Management Agency*, 715 So.2d at 646 (citations omitted).

Plaintiffs' claims based on allegations that FARA " controvert[ed]  workers compensation claims when a worker disagree with Northrop" and " often terminate[d] their benefits [after the worker left the RWRP], even though they are following the same doctors order that place them in the shop" are barred under *Baugh.*

The complaint also alleges a claim against FARA "because they place or require workers to enter the shop that cannot provide services." Although the basis of that claim is not altogether clear, it appears to relate to the administration of the LHWCA plan for Northrop. Plaintiffs have not provided any evidence or argument which persuades the Court that this claim is not related to the administration of Northrop's LHWCA plan. Therefore, this claim is similarly precluded under La. Rev. Stat. 22: §3036.

As stated above, FARA is entitled to summary judgment on all of the claims alleged by plaintiffs in their complaint. However, the Court notes that plaintiffs' memorandum in opposition to the motion for summary judgment (Doc. 54) states:

> Plaintiffs can make a prima facie case that they have been discriminated against based on the assertion by Northrop Grumman Shipbuilding ("NGS") that they were disabled and can show that FARA was a knowing and willing supporter of these acts. Plaintiffs will show that FARA's participation was a major factor in the overall makeup of the RWRP/Tool Room #20 practices that contributed not only to the discrimination but also the improper charging of labor. Plaintiffs will also show that Defendant's purportedly reasons for their adverse actions were pretextual.
>
> . . .
>
> Under Section 31 of the LHWCA it is unlawful to knowingly and willfully submit false information in order to reduce, deny, o[r] terminate benefits under Section 9 of the Longshore Act. FARA committed these actions and whether at the instruction of NGSS or under their discretionary authority, it is still a violation of the Act. An their actions cause harm to plaintiffs and others.

The quoted contentions indicate that plaintiffs think that their complaint states claims against FARA which are not alleged in the complaint, i.e., FARA knowingly and willingly supported the discriminatory acts of Northrop and that FARA submitted false information for the purpose of reducing, denying, or terminating benefits to an injured employee. Even construing plaintiffs' *pro se* complaint liberally, as the Court is required to do,[1] the claims cited above cannot be reasonably construed to have been alleged in the complaint. Moreover, because permitting plaintiffs to amend their complaint to state the claims referred to in their opposition to the motion for summary judgment would be futile for the reasons stated herein after, the Court declines to grant plaintiffs leave to amend their complaint. *See Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003).

Any discrimination claim by plaintiffs against FARA would flow from the administration of the LHWCA plan and would therefore be precluded under §3036. Therefore, plaintiffs need not

---

[1] *Rodriguez v. Holmes*, 963 F.2d 799, 801 (5th Cir. 1992).

be given the opportunity to amend their complaint to state a discrimination claim against FARA.

As for plaintiffs' contention that FARA submitted false information to reduce, deny, or terminate LHWCA benefits,  33U.S.C. §931(c) provides:

> A person including, but not limited to, an employer, his duly authorized agent, or an employee of an insurance carrier who knowingly and willfully makes a false statement or representation for the purpose of reducing, denying, or terminating benefits to an injured employee . . . shall be punished by a fine not to exceed $10,000, by imprisonment not to exceed five years or both.

A violation of §931(c) is a criminal offense, and the penalties imposed under §931(c)  are criminal penalties.  *See Atkinson   v. Gates, McDonald & Company*,  838 F.2d 808, 811 (5th Cir. 1988). Research failed to reveal any cases in which an injured employee sought to bring a claim for assessment of a penalty under §931(c).  Given that a violation of §931(c) constitutes a criminal offenses,  and finding no jurisprudence to the contrary, it is reasonable to conclude that an employee or former employee has no private right of action to bring a suit for assessment of a  penalty under §931(c) and  cannot state a claim for an alleged false statement or misrepresentation made to reduce, deny or terminate LHWCA benefits.  Accordingly,

**IT IS ORDERED** that plaintiffs' claims against F.A. Richard & Associates are dismissed with prejudice.

New Orleans, Louisiana, this 22nd day of December, 2008.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE