# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RICHARD TIPTON, ET AL.                          CIVIL ACTION

VERSUS                                          NO.  08-1267

NORTHROP GRUMMAN CORPORATION,                   SECTION "K"(5)
ET AL.

### ORDER AND OPINION

Before the Court is the Motion to Dismiss or Alternatively for More Definite Statement

filed on behalf of the defendants, Northrop Grumman Ship Systems, Inc. ("NGSS") and Northrop

Grumman Corporation ("NGC").  (Doc. 27.)  Having reviewed the pleadings, memoranda, and

relevant law, the Court, for the reasons assigned, GRANTS the motion and dismisses all of the

plaintiffs' claims against NGSS and NGC.

### BACKGROUND

Plaintiffs Richard Tipton, James Ursin, Donald Meacham, Berwick Lagarde, Oscar Dorsey,

Oswaldo Rodriguez, and Alvin Breaux  were employed by Northrop Grumman Ship Services, Inc.

at its shipbuilding facility at Avondale, Louisiana.  Each plaintiff sustained an employment-related

injury.  Each plaintiff, as a result of his injury, has permanent physical limitations which restrict his

work activities.  Despite those physical limitations, each plaintiff returned to work at the Avondale

facility,  and  NGSS assigned each plaintiff to the Restricted Work Rehabilitation Program

("RWRP") which provided employment for NGSS workers who had previously sustained injuries

resulting  in permanent work restrictions.  As employees in the RWRP, plaintiffs were classified as

semi-skilled workers for pay purposes  and were therefore paid an hourly rate less than that they

earned prior to their injuries.[1]  The RWRP job classification and the corresponding wage rate resulted from negotiations between NGSS and the New Orleans Metal Trades Council-AFL-CIO. Plaintiffs, with the exception of Oswaldo Rodriguez,  remain employed by NGSS and continue to be assigned to the RWRP.

Plaintiffs,  *pro se*, filed suit against NGSS, NGC, the United States Department of Labor, F.A. Richards & Associates, Inc., the New Orleans Metal Trades Council-AFL-CIO, and the International Association of Machinists and Aerospace Workers Local Lodge #37 alleging claims for violation of the Americans with Disabilities Act (42 U.S.C. §12111, *et seq.*), Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e), the Longshore & Harbor Workers Compensation Act (33 U.S.C. §901 *et seq.*)("LHWCA"), and the Racketeering Influenced and Corrupt Organizations Act ( 18 U.S.C. §1961 *et seq.*)("RICO") .

## LAW AND ANALYSIS

In considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must consider the allegations of a *pro se* plaintiff's complaint liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S. S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972). Moreover, the complaint must be liberally construed in favor of the plaintiff,  and all facts pleaded in the original complaint must be taken as true.  *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1980).  "Pro se status does not give plaintiff a prerogative to file meritless claims." *Olstad v. Collier*, No. 06-50099, 2006 WL 3687108 at **1, (5th Cir. 2006) (citing *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986)).

---

[1]The RWRP program apparently no longer exists in the same form as when each plaintiff returned to work and was assigned to the program.  For purposes of this motion, the changes in the program are not material.

In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969, 167 L. Ed.2d 929 (2007) the Supreme Court "retired" the *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed.2d 80 (1957), standard for analyzing a motion to dismiss under Rule 12(b)(6) which held that a district court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Noting that the *Conley* pleading standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard," the Supreme Court announced that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint." 550 U.S. at 563, 127 S.Ct. at 1969. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " *In re: Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his favor, the complaint states any valid claim for relief." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, §1367, at 601 (1969)).

## I. Employment Claims Against NGC

NGC contends that the plaintiffs' claims against it under the ADA, Title VII, and the LHWCA are barred under the doctrine of *res judicata* because the Court has previously dismissed similar claims against it by the plaintiffs in *Tipton v. Northrop Grumman Corporation*, No. 06-4715

(E.D. La. November 28, 2006). "*Res judicata* bars the litigation of claims that have been litigated or should have been raised in an earlier suit." *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir.1999). The test for *res judicata* has four elements: "(1) The parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action is involved in both actions." *Id.* at 934.

In that prior case each plaintiff in this case, with the exception of Alvin Breaux, filed suit against NGC alleging that it, in its capacity as the plaintiff's employer, violated provisions of the ADA, Title VII, and the LHWCA with respect to the plaintiff's employment in the RWRP program at the Avondale facility. This Court granted NGC's motion for summary judgment and dismissed the plaintiffs' claims against NGC after the plaintiffs failed to produce competent summary judgment evidence raising a genuine issue of material fact concerning whether NGC, as opposed to its wholly owned subsidiary NGSS, employed the plaintiffs. *Tipton v. Northrop Grumman Corporation*, No. 06-4715 (E.D. La. November 28, 2006). (Doc. 15.) The United States Court of Appeals for the Fifth Circuit affirmed the dismissal of the plaintiffs' claims. *Tipton v. Northrop Grumman Corporation*, No. 06-31307, 2007 WL 2188190, (5th Cir. July 31, 2007).

Thus a court of competent jurisdiction has previously dismissed on the merits the same claims against NGC now urged by plaintiffs Richard Tipton, James Ursin, Donald Meacham, Berwick Lagarde, Oswaldo Rodriguez, and Oscar Dorsey. Therefore, *res judicata* bars the claims against NGC brought by Richard Tipton, James Ursin, Donald Meacham, Berwick Lagarde, Oswaldo Rodriguez, and Oscar Dorsey pursuant to the ADA, Title VII, and the LHWCA, and the Court dismisses those claims with prejudice.

Plaintiff Alvin Breaux was not a party to the prior suit against NGC; therefore *res judicata* does not bar his claim. Nonetheless, the Court grants NGC's motion to dismiss Mr. Breaux's claims under the ADA, Title VII, and the LHWCA. Plaintiffs, including Mr. Breaux concede in their complaint that "[a]ll [plaintiffs] are now/are [sic] were employees of Northrop Grumman Ship Systems, a wholly-owned subsidiary of Northrop Grumman Corporation. . .." (Doc. 1, p. 3.) Mr. Breaux, having conceded that NGSS is his employer, cannot state a valid claim under the ADA, Title VII, and the LHWCA against NGC, a party which is not alleged to be Mr. Breaux's employer. Accordingly, the Court dismisses the claims brought by Alvin Breaux against NGC pursuant to the ADA, Title VII, and the LHWCA.[2] This reasoning applies equally to all plaintiffs.

## II. ADA and Title VII Claims Against NGSS

Under both Title VII and the ADA, an employee claiming a violation of the act must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged unlawful employment practice. 42 U.S.C. §2000e-5(e); 42 U.S.C. §12117. NGSS contends that because each plaintiff failed to file charges with the EEOC within 300 days of the alleged unlawful employment practices, that plaintiffs' employment claims must be dismissed as time- barred.

The limitation period "begins running from the time the complainant knows or reasonably should have known that the challenged act has occurred." *Vadie v. Mississippi State University*, 218 F.3d 365, 371 (5th Cir. 2000). Each plaintiff challenges his pay classification following his assignment to the RWRP. The chart below indicates the date that each plaintiff was assigned to the RWRP and the date on which each plaintiff filed with the EEOC a charge challenging their pay

---

[2] This same reasoning applies to each plaintiff's ADA, Title VII, and LHWCA claims against NGC and provides an alternative basis for dismissing those claims against NGC.

while employed within the RWRP. [3]

| Plaintiff | RWRP Classification Date | EEOC Charge Filed |
| --- | --- | --- |
| Richard Tipton | November 6, 2000 | September 2003 |
| Oscar Dorsey | April 4, 1997 | July 9, 2009 |
| James Ursin | January 8, 1999 | May 25, 2005 |
| Donald Meacham | October 16, 2000 | May 16, 2005 |
| Berwick Lagarde | October 11, 1999 | May 12, 2005 |
| Oswaldo Rodriguez | March 30, 1998 | May 12, 2005 |
| Alvin Breaux | November 5, 2001 | May 12, 2005 |
| Alvin Breaux | January 17, 2005 | May 2006 |

Each plaintiff filed an EEOC charge far more than 300 days after his assignment to the RWRP, the point at which the challenged pay classification attached to each plaintiff. The Supreme Court has previously held that an employer's decision with respect to setting pay is a discrete act of discrimination, and that the relevant period of limitations begins to run when the act first occurs. *Ledbetter v. Goodyear Tire & Rubber Co., Inc.,* 550 U.S. 618, 127 S. Ct. 2162, 167 L. Ed.2d 982 (2007). However, the "Lilly Ledbetter Fair Pay Act of 2009 ("The Ledbetter Act") effectively overturned the *Ledbetter* decision by amending 42 U.S.C. §2000e-5(e), to add the following provision:

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is

---

[3] "The Court may take judicial notice of EEOC documents as a matter of public record when deciding a Rule 12(B)(6) motion." *Wilson v. Lockheed Martin Corp.*, 2003 WL 22384933 (E.D. La. October 15, 2003) (Vance, J.), ( *citing Cinel v. Connick*, 15 F.3d 1138, 1343 n.6 (5th Cir. 1994)).

6

affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, §3, 123 Stat. 5, 5-6. The Ledbetter Act applies retroactively "to all claims of discrimination in compensation under Title VII . . . that are pending on or after [May 28, 2007]." *Id.* at 123 Stat. 5, 6-7 The Ledbetter Act also amends the ADA. *Id.* Thus, plaintiffs' ADA and Title VII claims are not administratively barred despite each plaintiff's failure to file a claim with the EEOC within 300 days of his assignment to the RWRP program.[4]

Alternatively NGSS asserts that plaintiffs' ADA and Title VII claims must be dismissed as time barred because Plaintiffs failed to file suit within ninety (90) days of receiving their right to sue letters from the EEOC. A plaintiff pursuing a claim under Title VII or the ADA must file suit within ninety (90) days after receiving statutory notice from the EEOC of the right to sue. 42 U.S.C. 2000e-5(f); *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 104 S. Ct. 1723, 80 L. Ed.2d 196 (1984).

The EEOC issued a right to sue letter to James Ursin, Donald Meacham, Berwick Lagarde, Oswaldo Rodriguez, and Oscar Dorsey on June 23, 2005, and issued a right to sue letter Richard Tipton on July 14, 2005. Thereafter, on June 26, 2006, the EEOC "reissued" right to sue letters to

---

[4] NGSS has submitted an affidavit by Kristen Barney, stating that Oswaldo Rodriguez ceased working for NGSS on November 11, 2003. If Mr. Rodriguez was not employed by NGSS after that date, he would not have received any paycheck which would have continued to trigger the 300 day limitation period for his EEOC charge. That being so, it seems likely that Mr. Rodriguez's employment claims would be time-barred. However, because this is a motion to dismiss, rather than a motion for summary judgment, the Court may not consider Ms. Barney's affidavit. As there is nothing in the pleadings to suggest that Mr. Rodriguez's employment claims would be time-barred, the Court lacks authority to dismiss on that basis.

each of those plaintiffs. Each of the June 26, 2006 right to sue letters included a notation stating that the letter was being reissued "because of inability to timely bring suit due to Hurricane Katrina." (Doc. 27-4.) The EEOC issued Alvin Breaux a right to sue letter on January 6, 2007.

NGSS contends that the ninety (90) day period limitation period begins to run from the date the EEOC issued the first right to sue letter, and that the EEOC's reissuance of the right to sue letters to Mr. Tipton, Mr. Ursin, Mr. Meacham, Mr. Lagarde, Mr. Rodriguez, and Mr. Dorsey has no effect on the calculation of that limitation period. No analysis of that issue is necessary. Even if the reissued right to sue letters triggered the ninety (90) day limitation, the claims of Mr. Tipton, Mr. Ursin, Mr. Meacham, Mr. Lagarde, Mr. Rodriguez, and Mr. Dorsey are nonetheless time-barred. Plaintiffs filed this suit on March 13, 2008, more than twenty (20) months after the EEOC reissued a right to sue letter to those plaintiffs. Accordingly, the ADA and Title VII claims of Mr. Tipton, Mr. Ursin, Mr. Meacham, Mr. Lagarde, Mr. Rodriguez, and Mr. Dorsey are time-barred and dismissed with prejudice.

Alvin Breaux's claims under the ADA and Title VII must also be dismissed with prejudice as time barred. More than fourteen (14) months elapsed between the date the EEOC issued Mr. Breaux a right to sue letter and March 13, 2008, the date Mr. Breaux filed suit.

### III. LHWCA Claims

Plaintiffs' complaint alleges that "defendant(s) individually or collectively violated and continue to violate other acts including the Longshore and Harbor Workers Act (LHWCA)." (Doc. 1, p. 2.) Plaintiffs' only specific allegation concerning a violation of the LHWCA is that their employer violated the intent of the act by retraining workers to perform first-class work and paying them as trainees. Such a claim does not fall within the scope of the LHWCA.

The LHWCA governs a covered employee's right to compensation or disability benefits for work related injuries. The LHWCA does not address the pay structure employers utilize in paying different classes of workers including trainees. Thus the defendants' Motion to Dismiss is granted to the extent it seeks to dismiss plaintiffs' claim that defendants violated the intent of the LHWCA by retraining workers to perform first-class work and paying them as trainees.

Additionally, NGSS urges that plaintiff's claims under the LHWCA must be dismissed because plaintiffs have failed to allege that they filed a claim for benefits with the Deputy Commissioner in the compensation district in which such injury occurred as required by 33 U.S.C. §913(a). Although plaintiffs urge in their opposition to the Motion to Dismiss that a number of them should be receiving total disability payments because their injuries prevent them from finding suitable alternative employment, plaintiffs do not represent that any of them filed a claim for total disability benefits with the Deputy Commissioner in the appropriate compensation district, nor have plaintiffs requested leave to amend their complaint to include such an allegation. Therefore, defendants are entitled to dismissal of plaintiffs' claim that they are entitled to total disability benefits under the LHWCA.

The Court notes that plaintiffs in their opposition to the Motion to Dismiss, urge that NGSS breached its obligation under the LHWCA to provide vocational rehabilitation training. Even construing plaintiffs' complaint broadly to allege such a claim, NGSS is nonetheless entitled to dismissal of that claim. Plaintiffs cite no specific provision of the LHWCA as requiring an employer to provide an injured employee with a program of vocational rehabilitation training, nor has the Court located any such requirement. In fact, 33 U.S.C. §939(c)(1) provides that the *Secretary of Labor* shall "provide employees receiving compensation *information* on medical, manpower, and

vocational rehabilitation services and *assist* such employees in obtaining the best such services available." (emphasis added). Given the lack of authority requiring an employer to provide vocational rehabilitation training to an injured employee, NGSS is entitled to dismissal of that specific claim under the LHWCA.

## IV.   RICO Claims

Plaintiffs also assert several claims under RICO. "Congress enacted RICO . . . for the purpose of seeking the eradication of organized crime in the United States." *Beck v. Prupis*, 529 U.S. 494, 496, 120 S. Ct. 1608, 1611, 146 L. Ed. 2d 561 (2000).

The substantive violations of RICO are defined in 18 U.S.C. § 1962(a)-(d). "Subsections (a), (b), and (c) were designed to work together to deal with three different ways in which organized crime infiltrates and corrupts legitimate organizations. Subsection (d) is an inchoate offense, prohibiting conspiracy to violate sections (a), (b), or (c)." *In re MasterCard International Inc., Internet Gambling Litigation*, 132 F. Supp. 2d 468, 476 (E.D. La. 2001) (internal quotations and citations omitted). Plaintiffs allege violations of all four subsections.

"Common elements are present in all four [RICO] subsections." *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir.1995) (citing *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 742 (5th Cir. 1989)). "These common elements teach that any RICO claim necessitates '(1) a *person* who engages in (2) a *pattern of racketeering activity*, (3) connected to the acquisition, establishment, conduct or control of an *enterprise*.' "[5] *Id.* (citing *Delta Truck & Tractor, Inc. v. J. I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)) (emphasis in original); *see also* Keith A. Langley & Mark Chevallier, Civil RICO, 21 Tex. Tech. L. Rev. 185 (1990). If each of the three prerequisites is satisfied, the court

---

[5] To facilitate its analysis of Plaintiffs claims, the Court will address these prerequisites in the following order: (1) pattern of racketeering, (2) person, (3) enterprise.

"may then continue to the substantive requirements of each respective subsection." *St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000). Inversely, if the plaintiff fails to satisfy one of the three prerequisites, the court need not analyze the substantive requirements of the respective subsections.

The Court concludes that plaintiffs lack standing to assert the alleged RICO claims and that there are deficiencies in their complaint and RICO Statement that warrant granting defendants' Motion to Dismiss plaintiffs' RICO claims.[6]

A. Standing Under 18 U.S.C. § 1964(c)

The party invoking federal jurisdiction bears the burden of establishing that he has standing to assert the claim upon which he is seeking relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed.2d 351 (1992). To have standing under 18 U.S.C. § 1964, a plaintiff must, among other things, have been "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. 1964(c). In *Whalen v. Carter*, 954 F.2d 1087, 1090-91 (5th Cir. 1992) ("*Whalen* I"),[7] the Fifth Circuit discussed the RICO standing requirement, stating:

---

[6] Plaintiffs' failure to allege sufficient facts to establish their RICO claims is not a procedural failure. Rather, it is an irremediable substantive failure. As already noted herein above, a *pro se* litigant's complaint should be liberally construed and, on a motion to dismiss, all factual allegations contained therein must be taken as true. Applying these standards, the Court has taken great care to discern from Plaintiffs' complaint and RICO Statement the substance of their allegations and has accepted as true all factual allegations contained therein. Having done so, the Court finds that Plaintiffs have not alleged sufficient facts to establish a basis for any of their RICO claims. Moreover, in light of the facts alleged in Plaintiffs' complaint and RICO Statement, which the Court has accepted as true, the Court is convinced that Plaintiffs can plead no set of facts which would establish a viable claim under 18 U.S.C. §1961, *et seq.* and that to grant Plaintiffs leave to amend would be futile.

[7] In *Whalen* I, the plaintiffs' claims arose out of allegedly fraudulent transactions involving the Bank of Greensburg, Carter Mobile Homes (CMH), and Prentiss H. Carter, Jr. and Associates (PHC). The plaintiffs, shareholders in CMH and partners in PHC, owned debentures issued by CMH. They alleged that the defendants conspired to complete certain improper

> [The] RICO standing provision seems to require, as a condition to a civil RICO action, that there be some nexus between the predicate acts and the subsequent injury. Interpreting this provision, the Fifth Circuit has concluded that the requisite nexus between predicate acts and subsequent injury is a causal relation. Under this interpretation of the RICO statute, a plaintiff has statutory standing to bring a claim as long as the defendants' predicate acts constitute both a factual and proximate cause of the plaintiff's alleged injury.

*Id.* The Fifth Circuit remanded *Whalen* I to the district court to determine whether the plaintiffs had standing to assert certain RICO claims consistent with its opinion. The district court determined that the plaintiffs lacked standing to assert those claims and again granted the defendants' motion for summary judgment. The plaintiffs again appealed. *Whalen v. Carter*, 21 F.3d 1109, 1994 WL 171685 (5th Cir. 1994) ("*Whalen* II"). In *Whalen* II, the Fifth Circuit affirmed the district court's conclusion that plaintiffs lacked standing to assert the disputed RICO claims and clarified the causal connection between the RICO injury and the RICO predicate acts, stating:

> RICO provides that any person injured in his business or property *by reason of* a violation of 18 U.S.C. § 1962 may sue for the damages he sustains. The Supreme Court interpreted this provision only weeks after *Whalen* I was decided in *Holmes v. Securities Investor Protection Corp.,* 112 S.Ct. 1311 (1992). In *Holmes,* the Court applied a proximate cause test which mandates that some *direct relation* is required between the injurious conduct alleged and the injury asserted by a plaintiff in a RICO claim. *Id.* at 1318. *See also Ocean Energy II, Inc. v. Alexander & Alexander, Inc.,* 868 F.2d 740, 744 (5th Cir.1989) (applying a proximate cause test to determine whether a person is injured "by reason of" a RICO violation).

*Id.* at *1 (emphasis in original). To determine whether plaintiffs have standing to assert their RICO

---

preferential transfers of money shortly before CMH went bankrupt, which caused a decrease in the value of the plaintiffs' investments. The plaintiffs sought damages under RICO, *inter alia,* for the diminution in value of their interest in PHC and the loss in value of their debentures and stock. In relevant part the court found that the plaintiffs lacked standing to assert some of their RICO claims, and granted summary judgment to the defendants on those claims; the plaintiffs appealed.

claims, the Court must examine the predicate acts alleged. If the injury alleged does not flow directly—that is, both factually and proximately—from the predicate acts, plaintiffs lack standing under RICO.

Title 18 United States Code section 1961(1) provides an exhaustive and exclusive list of activities in four categories which constitute racketeering and may therefore trigger operation of RICO. The first category includes generically enumerated State law offenses that are "chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A) (2006). The second category includes specific offenses indictable under title 18 of the United States Code (*i.e.*, the federal criminal code). 18 U.S.C. § 1961(1)(B) (2006). The third category includes certain labor-related acts indictable under title 29 of the United States Code. 18 U.S.C. § 1961(1)(C) (2006). The final category includes offenses involving securities fraud, narcotics transactions, immigration violations, and certain acts of terrorism. 18 U.S.C. § 1961(1)(D)(2006).

Plaintiffs allege in rambling prose a gallimaufry of acts by defendants constituting racketeering activity[8]; however, of their myriad allegations, only those alleging mail fraud and wire fraud are identified in section 1961(1) as activities which may constitute racketeering activities under RICO. The Court jointly analyzes the mail and wire fraud allegations because "[t]he Supreme Court has said that because the mail and wire fraud statutes share the same language in relevant part, the same analysis applies to each." *In re MasterCard International Inc., Internet Gambling Litigation*, 132 F. Supp. 2d 468, 481 (E.D. La. 2001) (quoting *United States v. Mills*, 199 F.3d 184, 188 (5th Cir. 1999) (internal quotations omitted).

---

[8] Among Plaintiffs allegations are mail fraud, wire fraud, perjury, breach of contract, conspiracy to misclassify employees, conspiracy to deny medical procedures, conspiracy to convince employees of NGSS that they are employees of NGC, conspiracy to commit workplace discrimination, and conspiracy to create a hostile work environment.

> To prove mail fraud pursuant to 18 U.S.C. §1341, the government must prove: (1) a scheme to defraud, (2) which involves the use of the mails, (3) for the purpose of executing the scheme. *United States v. Gray*, 96 F.3d 769 (5th Cir. 1996). To prove wire fraud pursuant to 18 U.S.C. §1343, the government must prove, (1) a scheme to defraud, (2) the use of, or causing the use of, wire communications in furtherance of the scheme. *Id.*. As to scienter, both RICO mail and wire fraud require evidence of intent to defraud, i.e., evidence of a scheme to defraud by false or fraudulent representations. *St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000).

*Id.* at 481-82 (internal quotations omitted).

Plaintiffs allege three mail and wire fraud schemes. The basis of the first scheme is that NGC misrepresented to the employees of NGSS, including plaintiffs, that they were employees of NGC. Plaintiffs contend that NGC made those misrepresentations directly through statements given to the media, as well as indirectly by virtue of NGC employees' participation in the affairs of NGSS, the use of NGC letterhead to communicate with plaintiffs regarding their employment, and the use of NGC's name and logo on payments tendered to plaintiffs.

This alleged scheme is little more than plaintiffs' thinly veiled attempt to accomplish under a RICO theory what they have failed to accomplish in prior litigation before this Court, as described herein above. *See Tipton v. Northrop Grumman Corporation*, No. 06-31307, 2007 WL 2188190, (5th Cir. July 31, 2007). Plaintiffs now attempt to torture that prior ruling into support for their RICO claim. Recasting their prior misinterpretation of corporate structure, plaintiffs now allege that their error resulted from fraud on the part of NGC. The attempt is unavailing. Even assuming, arguendo, that plaintiffs had pled the elements of such a scheme to defraud—which they have not—plaintiffs have failed to allege that the scheme caused injury to their business or property. Moreover, not only have plaintiffs failed to allege any injury to their business or property or business

14

resulting from the alleged scheme to defraud, but the Court cannot envision any such potential injury. Absent allegations of such an injury, the Court need not analyze whether plaintiffs' "injury" was proximately or factually caused by the predicate acts. Accordingly, plaintiffs lack standing to assert a RICO claim as to their first scheme to defraud.

The gravamen of the second alleged scheme to defraud is plaintiffs' allegation that following Hurricanes Katrina and Rita, NGC misrepresented to Congress that it employed workers in the Gulf Coast Region in order to secure emergency congressional funding to provide assistance to those employees when in fact the workers for whom NGC sought assistance were employees of NGSS.

Plaintiffs identify the "taxpayers" as the victims of this scheme, contending that NGC received funding to which it was not entitled. While plaintiffs are taxpayers, any injury allegedly sustained by taxpayers is too generalized to confer standing on plaintiffs as individuals. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 476-82, 102 S.Ct. 752, 761-64, 70 L.Ed.2d 700 (1982) (denying federal taxpayers standing under Article III to object to a particular expenditure of federal funds simply because they are taxpayers). Having pled only a generalized "injury" suffered by taxpayers and having failed to plead any injury specific to their business or property, plaintiffs lack standing to assert a RICO claim as to the second scheme alleged. Moreover, plaintiffs have not alleged that the funds granted to NGC were not used in the manner intended—that is, to benefit NGSS's Gulf Coast employees. That being so, rather than sustaining injury as a result of the alleged scheme, it seems more likely that a benefit may actually have been conferred on plaintiffs as employees of NGSS.

Additionally, plaintiffs allege that NGSS overcharged the United States Navy for labor costs associated with construction contracts at the NGSS shipyard. This third scheme to defraud has two

distinct aspects. First, plaintiffs allege that, before being injured in the course of their employment, they were "highly-skilled mechanics" who worked "in the yard" and were paid wages commensurate with their skill and experience. After being injured in the course of their employment and rendered permanently unable to work in the yard, plaintiffs were permanently reassigned to the RWRP in Tool Room # 20 and their wages were lowered to those of a trainee. Notwithstanding their new status and wages, plaintiffs contend that they continued to perform the tasks of highly-skilled mechanics. Second, plaintiffs allege that other workers injured in the course of their employment and temporarily assigned to Tool Room # 20 continued to be paid their former wages while performing significantly less demanding tasks. Thus, the essence of the scheme to defraud alleged by plaintiffs is that NGSS charged the Navy for the services of highly-skilled mechanics while paying plaintiffs less than they deserved and paying other employees more than they deserved.

Insofar as the scheme alleged relates to other NGSS employees, plaintiffs allege no injury to themselves. Rather, they discuss only those details as a means of highlighting the injustices they perceive they have been made to suffer while employed by NGSS in Tool Room # 20. Such a grievance does not confer standing under RICO. With respect to the alleged scheme as it relates to plaintiffs' own employment, they allege that NGSS has received payments from the Navy to which it was not entitled. As to that scheme, plaintiffs fail to plead a cognizable injury. A disparity between the amount of money billed to the Navy for plaintiffs' labor and the amount of money paid to plaintiffs by NGSS does not create a cognizable injury to plaintiffs. Even if such a disparity did amount to a cognizable injury, that injury would fall well short of being proximately caused by the pattern of racketeering alleged. That is, plaintiffs are not paid less *because* of the alleged predicate acts of fraud; rather, according to plaintiffs, they are paid less *so that* NGSS may carry out the alleged

predicate acts of fraud.

Therefore, because plaintiffs fail to state any fairly injury traceable to the predicate acts alleged, they lack standing to assert claims under RICO, and the Court dismisses with prejudice plaintiffs' RICO claims against NGC and NGSS. Although plaintiffs' lack of standing alone requires granting defendants' Motion to Dismiss, the Court nonetheless, in the interest of thoroughness, will, in the alternative, address the other deficiencies in plaintiffs' RICO claims.

## B. Predicate Acts

As noted previously, plaintiffs allege a pattern of mail and wire fraud. Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting [the] fraud . . ." FED. R. CIV. PROC. 9(b); *see Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067-68 (5th Cir. 1994). At a minimum, Rule 9(b) requires allegations of the particulars of "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tele-Phonic Services, Inc. v. TBS International Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1297, at 590 (1990)). The particularity requirement of Rule 9(b) applies equally to fraud allegations asserted as predicate acts in a RICO claim. *Tel-Phonic Services, Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1138-39 (5th Cir. 1992).

The Court has painstakingly attempted to cull from plaintiffs' protracted and obscure complaint and RICO Statement the substance of plaintiffs' claims. Ultimately, however, the Court has determined that plaintiffs have failed to allege the necessary specific details concerning the time, place, and contents of the allegedly false representations.

## C. Pattern of Racketeering Activity

Assuming *arguendo* that plaintiffs had pled facts sufficient to establish a racketeering activity—which they have not and cannot—they have failed to allege facts sufficient to establish a pattern of racketeering activity. Section 1961(5) defines a "pattern of racketeering activity" as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." A pattern of racketeering activity "consists of two or more criminal acts that are (1) related and (2) 'amount to or pose a threat of continued criminal activity.'" *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (internal quotations omitted). Continuity of racketeering activity may be shown by "either a closed period of repeated conduct, or an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'" *Word of Faith World Outreach Center Church, Inc.*, 90 F. 3rd 118, 122 (5th Cir. 1996) (quoting *H.J. Inc. v. Northwestern Bell Telephone Company*, 492 U.S. 229, 241, 109 S. Ct. 2893, 2902, 106 L. Ed. 2d 195 (1989)). Additionally, just as a plaintiff must plead a *predicate act* of fraud with particularity, a plaintiff alleging a *pattern* of fraud must also comply with the particularity requirement of Rule 9(b). *See Schaeffer v. Ascension College, Inc.*, 964 F. Supp. 1067, 1071-72 (M.D. La. 1997)

Neither plaintiffs' complaint nor their RICO statement allege a pattern of mail fraud or wire fraud. Moreover, as previously stated, plaintiffs' complaint and RICO Statement fail to allege the predicate acts of mail and wire fraud with the particularity required by FED. R. CIV. PROC. 9(b). To the extent that plaintiffs have failed to plead sufficient particularity the facts of even one predicate act, it would be illogical to conclude that they have pled sufficient facts to establish a pattern of racketeering.

D.  RICO Person

The RICO statute broadly defines a RICO "person" as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3) (2006). The Fifth Circuit has added to that definition a gloss requiring that "the RICO person must be one that either poses or has posed a continuous threat of engaging in the acts of racketeering." *Crowe v. Henry*, 43 F. 3d 198, 204 (5th Cir. 1995) (internal quotations and citation omitted). "The continuous threat requirement may not be satisfied if no more is pled than that the person has engaged in a limited number of predicate racketeering acts." *Id.*

Plaintiffs have indirectly alleged that NGC and NGSS are RICO persons. While NGC and NGSS are legal entities capable of holding a legal interest in property, those facts alone do complete the analysis of whether plaintiffs have sufficiently pleaded the existence of a RICO person. Plaintiffs allege that NGC engaged in mail and wire fraud in order to convince them that their employment extended through NGSS to NGC. As noted herein above, both this Court and the Fifth Circuit have directly addressed that issue and concluded that NGC is not plaintiffs' employer. Therefore, there can be no longer be any credible confusion concerning the identity of plaintiffs' employer, and therefore, the fraud alleged presents no real threat of continuation.

Plaintiffs also allege that NGC defrauded taxpayers by making false representations to Congress in order to obtain emergency funding after Hurricane Katrina. The need for such funding has passed, and plaintiffs do not allege that NGC continues to make false representations in an effort to obtain future funding from Congress.

With respect to plaintiffs' allegations that NGSS has defrauded the Navy by improperly charging for labor costs not actually incurred, there are two groups of employees at issue: plaintiffs and other NGSS employees. Defendants represent to this Court that the RWRP no longer exists at

NGSS. As such, there is no danger that the alleged scheme to defraud the Navy as to those employees continues. However, defendants also represent to this Court that plaintiffs who are still employed by NGSS have been "grandfathered" in and as such, they and they alone, retain the employment status and pay rate that are the basis of this scheme. In that manner, there may exist some threat that the arrangement of which plaintiffs complain will persist.[9] Accordingly, the Court finds that as to the third scheme to defraud, plaintiffs have sufficiently pled the existence of a RICO person.

### E. RICO Enterprise

It is axiomatic that "[a] plaintiff asserting a RICO claim must allege the existence of an enterprise." *Crowe*, 43 F.3d at 204 (citing *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987)). An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. 1961(4) (2006). A plaintiff must plead specific facts, not mere conclusory allegations, to establish the enterprise. *Montesano*, 818 F.2d at 427.

Plaintiffs allege that the defendants created an association in fact enterprise and "conducted or participated in the enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. §1962(b) (c) or (d)" and that the "Defendants and each of them conspired with the other Defendants to violate the provisions of 18 U.S.C. §1962(b)(c)(d)." ( Doc. 8, p. 39.) Having alleged that defendants violated 18 U.S.C. §1962(c) through an enterprise associated in fact, plaintiffs must plead that "the association in fact enterprise (1) has an existence separate and apart from the pattern of racketeering, (2) is an ongoing organization and (3) functions as a continuing unit as shown by a

---

[9] While the Court finds that plaintiffs have sufficiently pled this element as to this scheme to defraud, the Court expresses no opinion as to whether such an allegation has any merit.

hierarchical or consensual decision making structure." *In re MasterCard International Inc., Internet Gambling Litigation*, 132 F. Supp. 2d 468, 477 (E.D. La. 2001) (citing *Crowe*, 43 F.3d at 205; *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)).[10] Regarding the element of separateness, "[i]f the association has as its *raison d'etre* a single, discrete goal toward which all its energies are directed, the association is not a RICO enterprise." *In re MasterCard International Inc., Internet Gambling Litigation*, 132 F. Supp. 2d 468, 484 (E.D. La. 2001).

Plaintiffs have alleged three distinct schemes to defraud, each apparently involving different victims and different participants. However, the plaintiffs have alleged the existence of only one enterprise. In that portion of their RICO Statement entitled "THE ENTERPRISE" the plaintiffs state the following:

> Defendants, NORTHROP GRUMMAN SHIPBUILDING, along with Defendants the New Orleans Metal Trades Council, Local Lodge #37, Northrop Grumman Corporation and F. A. RICHARDS & ASSOCIATES, associated together for the common purpose of defrauding Plaintiffs and others for proper payment of wages.[11]

(Doc. 8 at 37.) Having alleged that the association *existed for the purpose of carrying on the pattern of racketeering* they allege, the plaintiffs have failed to allege the existence of an enterprise separate and apart from the pattern of racketeering. This failure is fatal to plaintiffs' RICO claims.[12]

---

[10] In the recently decided case of *Boyle v. United States*, ___ U.S. ___, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009), the Supreme Court addressed the "structure" requirement for an association in fact enterprise. Because the Court concludes, as set forth herein after, that plaintiffs have failed to allege the existence of an enterprise separate and apart from the pattern of racketeering activity, it is unnecessary to analyze the structure of the alleged enterprise.

[11] This is plaintiffs' only direct allegation of the existence of an enterprise.

[12] Without expressing any opinion as to the existence of other possibly valid enterprises which the plaintiffs might have alleged, the Court notes that even if Plaintiffs had alleged such a viable alternate enterprise, they would still lack standing to assert their RICO claims due to their failure to allege any cognizable injury flowing both factually and proximately from the alleged

In summary, the Court finds as follows: (i) the plaintiffs lack standing to assert their RICO claims because they have failed to allege any cognizable injury flowing factually and proximately from the alleged pattern of racketeering; (ii) the plaintiffs have failed to plead with sufficient particularity the alleged predicate racketeering acts of mail and wire; (iii) the plaintiffs have failed to plead with sufficient particularity a pattern of racketeering; and (iv) the plaintiffs have failed to plead the existence of a RICO enterprise that is separate and apart from the alleged pattern of racketeering.

Additionally, pursuant to the Eastern District of Louisiana's RICO Standing Order, which is designed to facilitate the handling of RICO claims, the Court ordered the plaintiffs to file a "RICO Statement" which, among other things, requires: i) that the plaintiff(s) "shall include the facts plaintiffs rely on to initiate this RICO complaint as a result of the 'reasonable inquiry' required by Federal Rule of Civil Procedure II"; ii) that the plaintiff "state how each victim allegedly was injured"; iii) that the plaintiff shall "[d]escribe in detail the pattern of racketeering activity," which shall include, "the alleged predicate acts and the specific statutes allegedly violated," "the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding each predicate act"; iv) a detailed description of the alleged enterprise; v) and a description of "the alleged relationship between the activities of the enterprise and the pattern of racketeering activity." (Doc. 3.) Despite the pleading directives of the Court's RICO Standing Order, plaintiffs failed to allege the particular facts necessary to sufficiently plead the alleged RICO violations. Therefore, the Court is disinclined to grant plaintiffs leave to amend their complaint. Moreover, the Court is of the opinion that plaintiffs can plead no set of facts which would remedy the deficiencies noted in this decision

_____

pattern of racketeering.

and that to grant plaintiffs leave to amend would ultimately be futile.

CONCLUSION

Plaintiffs have brought claims against NGC and NGSS under the ADA, Title VII, the LHWCA, and RICO. However, plaintiffs have failed to state any claim upon which relief can be granted, and their claims therefore must be dismissed with prejudice. Plaintiffs' employment-related claims against NGC are barred because plaintiffs concede in their complaint that NGSS is their employer, and as to each plaintiff except Alvin Breaux, those claims are barred under the doctrine of *res judicata*. Plaintiffs' ADA and Title VII claims against NGSS are time-barred. Plaintiff's LHWCA claims against NGSS as to pay structure are outside the scope of the statute as are plaintiff's LHWCA claims against NGSS for failure to provide a vocational rehabilitation training program. Additionally, plaintiffs' LHWCA claims against NGSS for disability benefits are barred by plaintiff's failure to allege that they filed for such benefits as required by 33 U.S.C. §913(a). Finally, plaintiffs lack standing to assert RICO claims against NGC and NGSS. Accordingly,

**IT IS ORDERED** that all claims asserted by plaintiffs against defendants Northrop Grumman Corporation and Northrop Grumman Ship Systems are dismissed with prejudice.

This 2nd day of September, 2009.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE