# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RICHARD TIPTON, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-1267** |
| **NORTHROP GRUMMAN CORPORATION, ET AL.** | **SECTION "K"(5)** |

## ORDER AND OPINION

Before the Court are the "Motion to Dismiss" filed on behalf of defendant the International Association of Machinists and Aerospace Workers Local Lodge #37 ("Lodge #37) (Doc 39) and the "Motion to Dismiss or, Alternatively For More Definite Statement" filed on behalf of defendant New Orleans Metal Trades Council ("NOMTC") (Doc. 31) seeking to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS both motions and dismisses plaintiffs' claims against Lodge #37 and NOMTC.

## BACKGROUND

Plaintiffs Richard Tipton, James Ursin, Donald Meacham, Berwick Lagarde, Oscar Dorsey, Oswaldo Rodriguez, and Alvin Breaux were employed by Northrop Grumman Ship Services, Inc. ("NGSS") at it shipbuilding facility at Avondale, Louisiana. Each plaintiff sustained an employment related injury. Each plaintiff, as a result of his injury, has permanent physical limitations which restrict his work activities. Despite those physical limitations, each plaintiff returned to work at the Avondale facility, and NGSS assigned each plaintiff to the Restricted Work Rehabilitation Program ("RWRP") which provided employment for NGSS workers who had previously sustained injuries

resulting in permanent work restrictions. As employees in the RWRP, plaintiffs were classified as semi-skilled workers for pay purposes and were therefore paid an hourly rate less than that they earned prior to their injuries.[1] The RWRP job classification and the corresponding wage rate resulted from negotiations between NGSS and the NOMTC, "the bargaining agent for Plaintiffs." (Doc. 8, p. 13). Lodge #37 is "the Local union that covers the classification of small tool repairmen. outside machinists, and several other crafts." (Doc. 8, p. 14). Plaintiffs, with the exception of Oswaldo Rodriguez, remain employed by NGSS and continue to be assigned to the RWRP.

Plaintiffs, *pro se*, filed suit against NGSS, Northrop Grumman Corporation, the United States Department of Labor, F.A. Richards & Associates, Inc., NOMTC, and Lodge #37 alleging claims for violations of the Americans with Disabilities Act (42 U.S.C. §12111, *et seq*.), Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e)("Title VII"), the Longshore & Harbor Workers Compensation Act (33 U.S.C. §901 *et seq*.) ("LHWCA"), and the Racketeering Influenced and Corrupt Organizations Act ( 18 U.S.C. §1961 *et seq*.)("RICO").

LAW AND ANALYSIS

In considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must consider the allegations of a *pro se* plaintiff's complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S. S.Ct. 594, 595-96 (1972). Moreover, the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1980). "Pro se status does not give plaintiffs a prerogative to file meritless claims." *Olstad v. Collier*, 205

---

[1] The RWRP program apparently no longer exists in the same form as when each plaintiff returned to work and was assigned to the program. For purposes of this motion, the changes in the program are not material.

Fed. Appx. 308, 310, 2006 WL 3687108 (5th Cir. 2006) citing *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986),

In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 1969, 167 L. Ed.2d 929 (2007) the Supreme Court "retired" the *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed.2d 80 (1957), standard for analyzing a motion to dismiss under Rule 12(b)(6) which held that a district court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Noting that the *Conley* pleading standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard," the Supreme Court announced that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint." 550 U.S. at 563., 127 S. Ct. at 1969. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re: Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his favor, the complaint states any valid claim for relief." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997) quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, §1367, at 601 (1969).

I. ADA and Title VII Claims

Title VII forbids employment discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. §2000e-2. "A court may entertain a Title VII claim only if the aggrieved party has exhausted his or her administrative remedies." *Merritt v. United Parcel Service, Inc.*, 321 Fed. Appx. 410, 413, 2009 WL 1024606 at *2 (5th Cir. 2009). The initial step in the administrative remedy process is to file a charge of discrimination with the EEOC. *Cornish v. Texas Board of Criminal Justice Office of the Inspector General*, 141 Fed. Appx. 298, 300, 2005 WL 1704459 at *2 (5th Cir. 2005).

Regarding claims under the ADA "an employee must comply with the ADA's administrative prerequisites prior to commencing an action in federal court . . . for violation of the ADA." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996)(per curiam). Additionally, " '[t]he ADA incorporates by reference the procedures applicable to actions under Title VII, 42 U.S.C. §2000e, et seq.' including the requirement that a plaintiff 'file a timely charge with the EEOC.'" *Mathes v. Harris County, Texas*, 31 Fed. Appx. 835, 2002 WL 243260 at *2 (5th Cir. January 17, 2002) *(quoting Dao v. Auchan Hypermarket*, 96 F.3d at 789).

Plaintiffs concede in their memoranda in opposition to the motions to dismiss that they "have not filed an EEOC charge" against NOMTC or Lodge #37. (Doc. 42, p. 2, Doc. 44, p. 2). Each plaintiff's failure to have filed a charge with the EEOC regarding their claim under both Title VII and the ADA mandates dismissal without prejudice of plaintiffs' claims under those acts for failure to state a claim.

## II. LHWCA Claim

Plaintiffs' complaint alleges that "defendant(s) individually or collectively violated and continue to violate other acts including the Longshore and Harbor Workers Act (LHWCA)."

(Doc. 1, p. 2.) Plaintiffs' only specific allegation concerning a violation of the LHWCA is that their employer violated the intent of the act by retraining workers to perform first-class work and paying them as trainees. In their complaint plaintiffs allege that NGSS is, or at all relevant times was, their employer. Plaintiffs do not allege that they were ever employed by either NOMTC or Lodge #37 ever. Clearly, given the lack of an employer-employee relationship between plaintiffs and NOMTC and Lodge #37, no claim for a violation of the LHWCA can be stated against them. *See* 33 U.S.C. §904(a).

III. Claims for Breach of Duty of Fair Representation

Plaintiffs' complaint alleges that the "Union" breached its duty of fair representation by "acting in an arbitrary, discriminatory, or bad faith manner in dealing with RWRP members." (Doc. 1, p.18). Specifically, the complaint alleges:

- In accordance with the negotiated CBA [collective bargaining agreement], employees in the RWRP are classified on NGSS' negotiated pay scale as "semi-skilled RWRP Maintenance["]. This "semi-skilled RWRP Maintenance position" earns a lower wage because the work performed typically less strenuous than other shipyard jobs. Indeed the Union has never filed a grievance based on the hourly rate paid to RWRP Maintenance workers.
- the union never filed a grievance based on the hourly rate paid to the RWRP Maintenance workers;
- that "[a]ny fair reading of the CBA would clearly show that the members of tool room 20 were left out and remains left out of the CBA";
- that it is obvious that the workers in the RWRP have been omitted "throughout all of the CBA's between the Company and the Union;
- that the union failed to file the grievance referred to in the November 25, 2002, letter sent by a representative of the National Labor Relations Board; and
- that the union failed to file the grievance referred to in the September 7, 2004, letter sent by a representative of the National Labor Relations Board.

5

(Doc. 1).

"[A] union owes employees a duty to represent them adequately as well as honestly and in good faith." *Air Line Pilots Assoc., Int'l v. O'Neill*, 499 U.S. 65, 75, 111 S.Ct. 1127, 1134, 113 L.Ed.2d 51 (1991). A suit by a union member against a union for breach of a duty of fair representation is implied under the National Labor Relations Act. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed, 476 (1983). Although it is common for an employee to file suit alleging both a claim against an employer for breach of a collective bargaining agreement and a claim against a union for breach of the duty of fair representation, such a joint suit is not necessary. A claim against a union for breach of the duty of fair representation "is a cause of action separate from the claim against the employer." *Breininger v. Sheet Metal Workers Int'l. Ass'n.*, 493 U.S. 67, 84, n. 8, 110 S.Ct. 424, 435, 107 L.Ed.2d 388 (1989). Therefore, it is of no significance that plaintiffs alleged no claim against NGSS for breach of the collective bargaining agreement.

The 6-month statute of limitations set out in Section 10(b) of the National Labor Relations Act applies to a suit against a union for breach of the duty of fair representation. *DelCostello v. Teamsters*, 462 U.S. at 169, 103 S.Ct. at 2293. "The statutory period begins to run when the plaintiff either knew or should have known of the injury itself, i.e., the breach of the duty of fair representation, rather than of its manifestations." *Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 171 (5th Cir. 1989).

The Court concludes that plaintiffs' claims for breach of the duty of fair representation grounded on the failure of NOMTC and Lodge #37 to file the grievances referred to in the letters from the NLRB dated November 25, 2002, and September 7, 2004 are time-barred. Long before

6

plaintiffs filed this suit on March 13, 2008, plaintiffs should have known that Lodge #37 and NOMTC were not going to file a grievance addressing plaintiffs' charges. "Prolonged inaction is sufficient to give a diligent plaintiff notice that the union has breached its duty of fair representation." *Pantoja v. Holland Motor Express, Inc.*, 965 F.2d 323, 327 (7th Cir. 1992). Years elapsed between the NLRB's issuance of the letters referring to the grievances, and March 13, 2008, the date plaintiffs finally filed suit against NOMTC and Lodge #37. Given the years of inaction by the NOMTC and Lodge #37, a reasonable person would have been put on notice that the union had breached its duty of fair representation with respect to the filing of the grievance referred to in each letter.

The remainder of plaintiffs' allegations concerning the alleged breach of the duty of fair representation relate to the plaintiffs' dissatisfaction with their classification and pay scale as employees in the RWRP as set forth in the collective bargaining agreements ("CBAs") in effect during the years that plaintiffs worked in the RWRP and plaintiffs' contention that they have never been included in the applicable CBA. NOMTC and Lodge #37 assert that the 6-month statutory period began to run at the latest on December 6, 2000, when the initial CBA between NGSS and the union was signed and by which time all plaintiffs, except Alvin Breaux, had been assigned to the RWRP. Plaintiffs contend that their claim is not time-barred because they only learned of the breach "earlier this year when the President of the Local in an outburst stated that the Union would not argue for the Plaintiffs and they agreed with NGSS that it was a matter for the Court." (Doc. 44, p. 18). Plaintiffs also contend that the claim is not time-barred because union representatives provided them with false information, including advising various plaintiffs that attempts to rectify the misclassification with respect to pay class were ongoing. Additionally plaintiffs contend that

the 6-month statute of limitation has not elapsed because there has been a continuing violation.

The alleged breaches related to plaintiffs' classification and pay scale as RWRP employees and the failure to include RWRP workers in the various CBAs do not constitute continuing violations. "[T]he Fifth Circuit has noted that 'courts, including this one, are wary to use the continuing violation doctrine to save claims outside the area of Title VII discrimination cases.'" *Hebert v. Gen. Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local 270,* 2004 WL 1597411, at *6 (E.D. La. July 16, 2004) (quoting *McGregor v. Louisiana State University Bd. of Supervisors*, 3 F.3d 850, 866 n.27 (5th Cir. 1993)). The signing of a CBA fixes the terms of employment, including employee classification and pay scale, between the union members and the employer for a determinate period of time. The signing of a CBA has a degree of permanence which should have triggered an effected individual's awareness of and duty to assert his rights. *See Id.* at *8 (union's adoption of referral method had degree of permanence sufficient to trigger plaintiff's awareness of and duty to assert rights). Therefore, once a CBA is executed, any breach of the duty of fair representation with respect to the negotiation of that agreement is established. Although the manifestations of that breach may have continuing effects, the breach itself is not continuing in nature. Thus, plaintiffs cannot evade defendants' assertions that this claim for breach of the duty of fair representation is time-barred based on their contention that the breach constitutes a continuing violation.

With respect to their claim that Lodge #37 and NOMTC breached the duty of fair representation with respect to negotiating plaintiffs' employee classification and pay scale as

8

employees in the RWRP, plaintiffs do not identify the specific offending CBA.[2] Plaintiffs' failure to identify the specific CBAs that it challenges does not preclude a finding that these claims are time-barred. It is not necessary to determine the exact dates of the applicable CBAs.

Pursuant to Federal Rule of Evidence 201(b)(2) the Court may take judicial notice of court records. 21B Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* §5106 (2d ed. 2005). Taking judicial notice of the complaint filed by Richard Tipton, James Ursin, Donald Meacham, Oswaldo Rodriguez, Berwick Lagard, and Oscar Dorsey in *Tipton v. Northrop Grumman Corporation*, C.A. 06-4715 (E.D. La.) (Doc. 1), the Court concludes that a reasonable person would have known that the union breached its duty of fair representation with respect to plaintiffs' allegations involving the negotiation of the CBAs. In the cited litigation, in which all of the plaintiffs in this case except Alvin Breaux participated, the plaintiffs sued Northrop Grumman Corporation and Northrop Grumman Shipbuilding Services challenging their employee classification and pay scale in connection with their employment within the RWRP. It is beyond purview that the plaintiffs in this suit knew of the applicable CBA between NGSS, their employer, and Lodge #37 and NOMTC. That knowledge, coupled with the demonstrated prior dissatisfaction with their employment classification and pay scale establishes that not later than March 25, 2006, a reasonable person, including all of the plaintiffs in this suit knew or should have known, that he had a claim against the union for breach of the duty of fair representation based on the alleged misclassification of the RWRP employees for pay purposes. Because plaintiffs did not file this suit naming Lodge #37 and NOMTC as defendants in a claim for breach of the duty of fair representation until far more

---

[2] Lodge #37 and NOMTC indicate in their memorandum in support of their respective motions to dismiss that the three applicable CBAs were signed December 6, 2000, June 30, 2003, and March 5, 2007.

than six months after the filing of *Tipton v. Northrop Grumman Corporation*, C.A. 06-4715, each plaintiffs' claim arising from any collective bargaining agreement in effect from the time that plaintiff began working in the RWRP until August 2006, the filing date of *Tipton v. Northrop Grumman Corporation,* is dismissed with prejudice as time-barred. Nor can plaintiffs' allegations that union representatives falsely informed them that they were continuing to address the misclassification issues prevent dismissal of their claims as time- barred. Such false information did not relieve plaintiffs of their obligation to exercise reasonable diligence to discover the terms of the applicable CBA. *See Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 412-13 (5th Cir. 1990).

The Court also concludes that to the extent that plaintiffs allege claims for breach of the duty of fair representation arising from the negotiation of the CBA signed March 5, 2007, that those claims are also time-barred because plaintiffs failed to file this suit within 6-months after the signing of that CBA. Plaintiffs have a long history of dissatisfaction with the efforts of Lodge #37 and NOMTC on plaintiffs' behalf with respect to their classification and pay scale in connection with their employment in the RWRP. Based on plaintiffs' allegations, it is apparent that the March 7, 2007, CBA failed to remedy plaintiff's dissatisfaction with their employment classification and pay scale. Plaintiffs did not file this suit until more than one year after the signing of the 2007 CBA. Within six months of the signing of the 2007 CBA, plaintiffs knew or should have known of the signing of that CBA, the failure of that CBA to address plaintiffs' concerns related to its negotiation, and the breach of the duty of fair representation. Because plaintiffs filed this suit more than six months after they knew or should have known of the breach of the duty of fair representation with respect to the negotiation of the 2007 CBA, plaintiffs' claims arising from the negotiation of that CBA are time-barred and must be dismissed with prejudice.

IV. RICO Claims

Plaintiffs also assert various claims under RICO, a statute enacted "for the purpose of seeking the eradication of organized crime in the United States." *Beck v. Prupis*, 529 U.S. 494, 496, 120 S. Ct. 1608, 1611, 146 L. Ed. 2d 561 (2000).

The substantive violations of RICO are defined in 18 U.S.C. § 1962(a)-(d). "Subsections (a), (b), and (c) were designed to work together to deal with three different ways in which organized crime infiltrates and corrupts legitimate organizations. Subsection (d) is an inchoate offense, prohibiting conspiracy to violate sections (a), (b), or (c)." *In re MasterCard International Inc., Internet Gambling Litigation*, 132 F. Supp. 2d 468, 476 (E.D. La. 2001) (internal quotations and citations omitted). As to Local Lodge #37 and NOMTC, plaintiffs allege violations of all four subsections.

"Common elements are present in all four [RICO] subsections." *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir.1995) (citing *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 742 (5th Cir. 1989)). "These common elements teach that any RICO claim necessitates '(1) a *person* who engages in (2) a *pattern of racketeering activity*, (3) connected to the acquisition, establishment, conduct or control of an *enterprise*.'" *Id.* (citing *Delta Truck & Tractor, Inc. v. J. I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)); *see also* Keith A. Langley & Mark Chevallier, Civil RICO, 21 Tex. Tech. L. Rev. 185 (1990). If each of the three prerequisites is satisfied, the court "may then continue to the substantive requirements of each respective subsection." *St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000). To put it another way, if the plaintiff fails to satisfy any one of the three prerequisites, the court need not analyze the substantive requirements of the respective subsections.

Plaintiffs' long, disjointed complaint and RICO Statement allege a broad range of acts by NOMTC and Lodge #37 constituting racketeering activity. The acts alleged include mail fraud, wire fraud, breach of contract, conspiracy to misclassify RWRP workers, conspiracy to leave RWRP workers out of the collective bargaining agreements, conspiracy to underpay plaintiffs, conspiracy to overcharge for labor, conspiracy to deny medical procedures, and conspiracy to create a hostile work environment. Only the allegations of mail fraud and wire fraud are identified in section 1961(1) as activities which may constitute "racketeering activities" under RICO.

The Court jointly analyzes the mail and wire fraud allegations because "[t]he Supreme Court has said that because the mail and wire fraud statutes share the same language in relevant part, the same analysis applies to each." *In re MasterCard International Inc., Internet Gambling Litigation*, 132 F. Supp. 2d 468, 481 (E.D. La. 2001) (quoting *United States v. Mills*, 199 F.3d 184, 188 (5th Cir. 1999)) (internal quotations omitted).

> To prove mail fraud pursuant to 18 U.S.C. §1341, the government must prove: (1) a scheme to defraud, (2) which involves the use of the mails, (3) for the purpose of executing the scheme. *United States v. Gray*, 96 F.3d 769 (5th Cir. 1996). To prove wire fraud pursuant to 18 U.S.C. §1343, the government must prove, (1) a scheme to defraud, (2) the use of, or causing the use of, wire communications in furtherance of the scheme. *Id.*. As to scienter, both RICO mail and wire fraud require evidence of intent to defraud, i.e., evidence of a scheme to defraud by false or fraudulent representations. *St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000).

*Id.* at 481-82 (internal quotations omitted).

Plaintiffs allege that NOMTC and Lodge #37 participated, with other parties named in the complaint as defendants, in several mail and wire fraud schemes involving schemes to defraud described as follows: 1) a scheme to make fraudulent misrepresentations to plaintiffs concerning their

12

pay, employee classification, medical status, department number, and reimbursement or pay for medical absences; 2) a scheme to violate the CBAs, misclassify employees, leave the RWRP workers out of the CBAs, and deprive plaintiffs of the benefits of the CBAs; 3) a scheme to provide false information to government agencies, including the National Labor Relations Board, to defraud plaintiffs of the benefits of the collective bargaining agreement; and 4) a scheme to "mischarge"/overcharge the U. S. Navy for labor costs on construction projects.

As to the first three schemes to defraud, the allegations lack the necessary specificity to support a RICO claim. The Federal Rules of Civil Procedure require that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting [the] fraud . . ." FED. R. CIV. PROC. 9(b); *see Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067-68 (5th Cir. 1994). At the very least, Rule 9(b) requires the party alleging fraud to plead the particulars of "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tele-Phonic Services, Inc. v. TBS International Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1297, at 590 (1990)). The particularity requirement of Rule 9(b) applies equally to fraud allegations asserted as predicate acts in a RICO claim. *Tel-Phonic Services, Inc. v. TBS Intern., Inc.*, 975 F.2d at 1138-39.

Plaintiffs' complaint and RICO Statement are replete with amorphous, conclusory allegations of fraud. The Court has undertaken painstaking efforts to dissect the ponderous and chaotic complaint and RICO Statement to pinpoint the substance of plaintiffs fraud allegations. Despite that considerable effort, the Court has found insufficient detail regarding the time, place, and contents of the alleged false representations in the first three alleged schemes to defraud and

13

therefore concludes that plaintiffs have failed to plead their allegations of fraud with sufficient particularity to satisfy the pleading standard of Rule 9(b).

Additionally, as to the first three schemes to defraud, the Court concludes that it need not give plaintiffs an opportunity to amend their complaint. Pursuant to the Eastern District of Louisiana's RICO Standing Order, which is designed to facilitate the handling of RICO claims, the Court ordered the plaintiffs to file a "RICO Statement" which, among other things, requires: that the plaintiff(s) "shall include the facts plaintiffs rely on to initiate this RICO complaint as a result of the 'reasonable inquiry' required by Federal Rule of Civil Procedure II" and that the plaintiff shall "[d]escribe in detail the pattern of racketeering activity," which shall include, "the alleged predicate acts and the specific statutes allegedly violated," "the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding each predicate act"(Doc. 3.) Despite the pleading directives of the Court's RICO Standing Order, plaintiffs failed to allege the particular facts necessary to sufficiently plead the allegations of mail and wire fraud. Therefore, the Court is disinclined to grant plaintiffs leave to amend their complaint.

Moreover, the Court cannot envision any allegations of fact concerning those three schemes to defraud which would "state a claim to relief that is plausible on its face." *In re: Katrina Canal Breaches Litigation*, 495 F.3d at 205. Neither plaintiffs' complaint nor their RICO Statement offer any hint as to what benefit would enure to Lodge #37 or NOMTC as a result of the first three alleged scheme to defraud, and the Court is unable to discern any such benefit. Absent at least some perceived benefit to Lodge #37 and NOMTC from the first three alleged schemes to defraud, no RICO claim based on those schemes to defraud would be plausible on its face.

14

As to the fourth alleged scheme to defraud, i.e., the scheme to "mischarge" /overcharge the United States Navy for labor costs in connection with construction projects at the NGSS's shipyard, the Court concludes that plaintiffs lack standing to assert that claim. The party invoking federal jurisdiction bears the burden of establishing that he has standing to assert the claim upon which he is seeking relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed.2d 351 (1992). To have standing under 18 U.S.C. § 1964, a plaintiff must, among other things, have been "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. 1964(c). In *Whalen v. Carter*, 954 F.2d 1087, 1090-91 (5th Cir. 1992) ("*Whalen* I"),[3] the Fifth Circuit discussed the RICO standing requirement, stating:

> [The] RICO standing provision seems to require, as a condition to a civil RICO action, that there be some nexus between the predicate acts and the subsequent injury. Interpreting this provision, the Fifth Circuit has concluded that the requisite nexus between predicate acts and subsequent injury is a causal relation. Under this interpretation of the RICO statute, a plaintiff has statutory standing to bring a claim as long as the defendants' predicate acts constitute both a factual and proximate cause of the plaintiff's alleged injury.

*Id.* The Fifth Circuit remanded *Whalen* I to the district court to determine whether the plaintiffs had standing to assert certain RICO claims consistent with its opinion. The district court determined that the plaintiffs lacked standing to assert those claims and again granted the defendants' motion for

---

[3] In *Whalen* I, the plaintiffs' claims arose out of allegedly fraudulent transactions involving the Bank of Greensburg, Carter Mobile Homes (CMH), and Prentiss H. Carter, Jr. and Associates (PHC). The plaintiffs, shareholders in CMH and partners in PHC, owned debentures issued by CMH. They alleged that the defendants conspired to complete certain improper preferential transfers of money shortly before CMH went bankrupt, which caused a decrease in the value of the plaintiffs' investments. The plaintiffs sought damages under RICO, *inter alia*, for the diminution in value of their interest in PHC and the loss in value of their debentures and stock. In relevant part the court found that the plaintiffs lacked standing to assert some of their RICO claims, and granted summary judgment to the defendants on those claims; the plaintiffs appealed.

15

summary judgment. The plaintiffs again appealed. *Whalen v. Carter*, 21 F.3d 1109, 1994 WL 171685 (5th Cir. 1994) ("*Whalen* II"). In *Whalen* II, the Fifth Circuit affirmed the district court's conclusion that plaintiffs lacked standing to assert the disputed RICO claims and clarified the causal connection between the RICO injury and the RICO predicate acts, stating:

> RICO provides that any person injured in his business or property *by reason of* a violation of 18 U.S.C. § 1962 may sue for the damages he sustains. The Supreme Court interpreted this provision only weeks after *Whalen* I was decided in *Holmes v. Securities Investor Protection Corp.,* 112 S.Ct. 1311 (1992). In *Holmes,* the Court applied a proximate cause test which mandates that some *direct relation* is required between the injurious conduct alleged and the injury asserted by a plaintiff in a RICO claim. *Id.* at 1318. *See also Ocean Energy II, Inc. v. Alexander & Alexander, Inc.,* 868 F.2d 740, 744 (5th Cir.1989) (applying a proximate cause test to determine whether a person is injured "by reason of" a RICO violation).

*Id.* at *1 (emphasis in original). To determine whether plaintiffs have standing to assert their RICO claims, the Court must examine the predicate acts alleged. If the injury alleged does not flow directly—that is, both factually and proximately—from the predicate acts, plaintiffs lack standing under RICO.

As previously stated, plaintiffs allege that NOMTC, Lodge #37, and NGSS conspired to "mischarge"/overcharge the United States Navy for labor costs associated with construction contracts at the NGSS shipyard. This scheme has two distinct aspects. First, plaintiffs allege that, before being injured in the course of their employment, they were "highly-skilled mechanics" who worked "in the yard" and were paid wages commensurate with their skill and experience. After being injured in the course of their employment and rendered permanently unable to work in the yard, plaintiffs were permanently reassigned to the RWRP in Tool Room # 20 and their wages were lowered to those of a trainee. Notwithstanding their new status and wages, plaintiffs contend that they continued to perform the tasks of highly-skilled mechanics. Second, plaintiffs allege that other

16

workers injured in the course of their employment and temporarily assigned to Tool Room # 20 continued to be paid their former wages while performing significantly less demanding tasks. Thus, the essence of the scheme to defraud alleged by plaintiffs is that Lodge #37, NOMTC , and NGSS conspired to charge the Navy for the services of highly-skilled mechanics while paying plaintiffs less than they deserved and paying other employees more than they deserved.

Insofar as that scheme relates to employees other than themselves, plaintiffs allege no injury to themselves. Rather, they discuss only those details as a means of highlighting the injustices they perceive they have been made to suffer while employed by NGSS in Tool Room # 20. Such a grievance does not confer standing under RICO. With respect to the alleged scheme as it relates to plaintiffs' own employment, they allege that NGSS has received payments from the Navy to which it was not entitled. As to that scheme, plaintiffs fail to plead a cognizable injury. A disparity between the amount of money billed to the Navy for plaintiffs' labor and the amount of money paid to plaintiffs by NGSS does not create a cognizable injury to plaintiffs. Even if such a disparity did amount to a cognizable injury, that injury would fall well short of being proximately caused by the pattern of racketeering alleged. That is, plaintiffs are not paid less *because* of the alleged predicate acts of fraud; rather, according to plaintiffs, they are paid less *so that* NGSS may carry out the alleged predicate acts of fraud. Because plaintiffs' lack of standing is fatal to their claim that Lodge #37 and NOMTC conspired with NGSS to "mischarge"/overcharge the United States Navy for labor costs, the Court dismisses that claim with prejudice .

Accordingly,

**IT IS ORDERED** that plaintiffs' claims against defendants International Association of Machinists and Aerospace Workers Local Lodge #37 and New Orleans Metal Trades Council alleging violations of Title VII of the Civil Rights Act of 1964 and the Americans With Disabilities

17

Act are dismissed without prejudice;

**IT IS FURTHER ORDERED** that all of plaintiffs' remaining claims against defendants International Association of Machinists and Aerospace Workers Local Lodge #37 and New Orleans Metal Trades Council are dismissed with prejudice.

New Orleans, Louisiana, this 29th day of September, 2009.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE